FILED

2011 FEB 24  P 1:50

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
[illegible]

Paid
NP
(5)

1  Jessica Fry, Bar No. 264480
   jessicaf@lawfoundation.org
2  Sayuri K. Sharper, Bar No. 232331
   ssharper@alum.mit.edu
3  LAW FOUNDATION OF SILICON VALLEY
   FAIR HOUSING LAW PROJECT
4  152 North Third Street, Third Floor
   San Jose, CA 95112
5  Telephone: (408) 280-2458
   Facsimile: (408) 293-0106
6
   Attorneys for Plaintiffs Christophe Juncker,
7  Marina Martin-Juncker, Valerie Barron, Lamart
   Johnson, Lashawn Johnson, Kataesha Dubose,
8  and Kelvin Dubose

ADR

9               UNITED STATES DISTRICT COURT
10              NORTHERN DISTRICT OF CALIFORNIA
11                    San Jose Division

12 | CHRISTOPHE JUNCKER, individually and as ) Case No. — 0886
   | Guardian Ad Litem for MARINA MARTIN- )   V11
13 | JUNCKER, VALERIE BARRON, individually)           HRL
   | and as Guardian Ad Litem for LAMART )
14 | JOHNSON, LASHAWN JOHNSON, and )
   | KATAESHA DUBOSE, and KELVIN       ) **COMPLAINT FOR INJUNCTIVE,**
15 | DUBOSE,                           ) **DECLARATORY, AND MONETARY**
                                       ) **RELIEF; DEMAND FOR JURY TRIAL**
16 |     Plaintiffs,                   )
                                       )
17 | v.                                )
                                       )
18 | CLARITO REALICA, ELVIRA REALICA,  )
   | MARK REALICA, RICARDO DE LEON,    )
19 | MAYNARD DE LEON, and REGINA       )
   | VENTURA,                          )
20                                     )
   |     Defendants.                   )
21 |_____)

22                        **I. INTRODUCTION**

23       In this matter, Defendant landlords, Clarito Realica, Elvira Realica, Mark Realica, and

24  Defendant managers Regina Ventura, Ricardo De Leon, and Maynard De Leon created and

25  enforced rules that unreasonably restricted tenant families with children at Landmark Apartments.

26  These rules created an anti-child atmosphere that unfairly discriminated against tenants with

27  children in violation of both state and federal fair housing statutes.

28

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF


## II. JURISDICTION

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 because the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to Plaintiffs' federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

## III. INTRADISTRICT ASSIGNMENT

2. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

3. Intradistrict assignment in San Jose is proper since the unlawful conduct that gives rise to these claims occurred in Santa Clara County.

## IV. PARTIES

4. Plaintiff CHRISTOPHE JUNCKER is a single father and tenant at Landmark Apartments.

5. Plaintiff MARINA MARTIN-JUNCKER is the six-year old daughter of Christophe Juncker, who is acting as her guardian ad litem for the purposes of this lawsuit. Marina is also a tenant at Landmark Apartments.

6. Plaintiff VALERIE BARRON is the parent and guardian ad litem of Lamart Johnson, Lashawn Johnson, and Kataesha DuBose. She is a former tenant at Landmark Apartments, whose lease was not renewed by Landmark Apartments.

7. Plaintiff KELVIN DUBOSE is in a domestic relationship with partner Valerie Barron, and is the parent of Lamart Johnson, Lashawn Johnson, and Kataesha DuBose. He is a former tenant at Landmark Apartments, whose lease was not renewed by Landmark Apartments.

8. Plaintiff LAMART JOHNSON is the 13-year old son of Valerie Barron and Kelvin DuBose. Lamart is a former tenant at Landmark Apartments. Valerie Barron is acting as his guardian ad litem for purposes of this lawsuit.

9. Plaintiff LASHAWN JOHNSON is the 11-year old son of Valerie Barron and Kelvin DuBose  Lashawan is a former tenant at Landmark Apartments. Valerie Barron is acting as his guardian ad litem for purposes of this lawsuit.

10. Plaintiff KATAESHA DUBOSE is the 6-year old daughter of Valerie Barron and Kelvin DuBose. She is a former tenant at Landmark Apartments. Valerie Barron is acting as her guardian ad litem for purposes of this lawsuit.

11. LANDMARK APARTMENTS ("Landmark Apartments") is an apartment complex located at 18450 Oka Road, Los Gatos, California.

12. At all relevant times, Defendants CLARITO, ELVIRA and MARK REALICA owned and operated the Landmark Apartments.

13. At all relevant times, Defendants RICARDO DE LEON and MAYNARD DE LEON were employed as managers of the Landmark Apartments.

14. At all relevant times, Defendant REGINA VENTURA was a tenant of and on-site manager for Landmark Apartments.

15. At all relevant times, Defendants were engaged in the business of renting and managing housing to members of the public.

## V. FACTS

### LANDMARK'S MANAGEMENT AND CHILD POLICIES

16. The two Plaintiff families moved into the Landmark Apartments because of its location near good schools, and its apparent family-oriented environment. They moved in because it was a safe community in which they could raise their children.

17. Unfortunately, in the fall of 2009, Defendants Mark, Clarito, and Elvira Realica, the owners of Landmark Apartments, fired their in-place on-sight management, and hired Defendants Ricardo and Maynard De Leon. They also gave on-sight management authority to another tenant, Defendant Regina Ventura.

18. Under this new management, Plaintiffs were subjected to a virtual reign of terror by management, including but not limited to children being yelled at, parents berated, and other severe and pervasive harassment.

19. The main perpetrator of these actions was Defendant Ventura. However, the owners and other managers have fully ratified Defendant Ventura's arbitrary conduct. They were aware of the concerns that the tenants in the complex had. Yet, they chose to do nothing while the situation escalated.

### A. The Barron-DuBose Family

20. Plaintiffs Valerie Barron and Kelvin DuBose are former tenants at Landmark Apartments, along with their three young children, Plaintiffs Lamart Johnson, LaShawn Johnson, and Kataesha DuBose (hereafter, these plaintiffs will be referred to as "the Barron-DuBose Plaintiffs").

21. The Barron-DuBose Plaintiffs moved into the complex in April 2009. They enjoyed living at Landmark Apartments before the new management came into place.

22. Once Defendants De Leons and Ventura were hired, however, the environment changed drastically. The community, which had once been very family friendly, became a hostile environment for families with young children.

23. The new management began to impose arbitrary and unintelligible rules. Defendant Ventura told the Barron-DuBose children that they could only play in one area some days and another area other days. At other times, Defendant Ventura told the children that they could not be outside at all. Defendant Ventura frequently yelled at the children to enforce these arbitrary rules.

24. The children were traumatized by their treatment, and stopped playing outside of their apartment. However, they were harassed even when playing on their own patio. Defendant Ventura yelled at the children because purportedly they were not allowed to be on their patio without an adult supervising them.

25. In March 2010, the Barron-DuBose Plaintiffs received a notice from the management that Landmark Apartments would not renew their lease. The notice offered no explanation as to why the lease was not being renewed.

26. When Mr. DuBose went to the manager's office to ask about the lease, he was told that the lease was not being renewed because his children were "vandalizing things". At no time did the children vandalize anything at the complex, and the family had never been notified that the children were causing such problems.

27. When Ms. Barron went to the manager's office to turn in the keys, Ricardo de Leon, Maynard de Leon, and Ricardo de Leon's wife were present. Mrs. De Leon asked Ms. Barron why she was leaving. Confused, Ms. Barron said that her lease was not renewed allegedly because of her children's behavior.

28. Mr. and Mrs. De Leon assured Ms. Barron that there was no problem, they had been good tenants, and even encouraged the Barron-DuBose family to stay. Ms. Barron was frustrated by the mixed messages. Because the Barron-DuBose family had already signed another lease, they were unable to stay at Landmark Apartments at this time. However, Ms. Barron expressed a desire to return to Landmark Apartments in the future, and she was encouraged to do so.

29. In the fall of 2010, a three-bedroom, first-floor apartment became available at Landmark Apartments. Ms. Barron immediately inquired as to its availability. She called the manager's office and was told that the unit was promised to someone else and could not be rented to her family. For several weeks after that conversation, the For Rent sign remained posted and no family moved in.

30. On or about September 27, 2010, the Barron-DuBose children went to visit friends living at Landmark Apartments. When Defendant Ventura saw the children, she called the police.

**B. The Juncker Family**

31. Christophe Juncker has been a tenant since 2008. He has a six-year old daughter, co-plaintiff Marina Martin-Juncker, and lives next door to Defendant Ventura.

32. Christophe Juncker and his daughter have been the victim of severe, pervasive, and continuous discrimination and harassment by Defendants.

-5-
COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

33. When Defendant Ventura became a manager, Mr. Juncker noticed that she was "cracking down" on children very aggressively, and imposing rules targeted at children playing outside. Under Defendant Ventura's rules, children could not make any noise while playing outside because the noise bothered people trying to watch TV. She also required one adult per child supervision for children playing outside at all times.

34. When any of these rules were broken, Defendant Ventura threatened tenants with eviction. She screamed at people in front of their doors, and screamed threats at the children.

35. In the fall of 2009, Mr. Juncker asked a neighboring tenant to watch his daughter for a few minutes. Shortly thereafter, Defendant Ventura showed up at his doorstep and yelled at him, stating that his child was playing outside but he was inside, and that it was unacceptable. She told him that there had to be one parent per child.

36. Defendant Ventura has accused Mr. Juncker's daughter of "vandalism" for drawing in chalk on the sidewalk, and yelled at Mr. Juncker for his parenting practices.

37. Mr. Juncker was told that Defendant Ventura has been spreading unfounded and very damaging rumors of child sexual abuse against him.

38. On July 30, 2010, Mr. Juncker was teaching his daughter how to ride her bicycle. Defendant Ventura approached Mr. Juncker and his six-year old daughter, screaming that bicycles were not allowed. When Mr. Juncker explained that Marina was just sitting on the stationary bicycle for practice, Defendant Ventura became very angry and verbally aggressive.

39. During this encounter, Mr. Juncker became fearful that Defendant Ventura was going to become violent. Her body language was extremely aggressive and she seemed ready to hit someone. After Mr. Juncker started calling out for help, asking passersby to witness her abusive behavior, Defendant Ventura backed off.

40. Afterwards, Defendant Ventura returned to find Mr. Junker, and continued to yell at him in front of his daughter. When Mr. Junker pointed out her inappropriate behavior, she screamed three times that she did not care. She called Mr. Juncker a jerk, a bad parent, and made wild accusations about his parenting skills.

41. Following this incident, Mr. Juncker made a complaint in writing to Defendant De Leon. Mr. Juncker mailed the letter on July 30, 2010, but never heard back from anyone. Mr. Juncker tried calling the manager's office, but the call was re-routed to Defendant Ventura's phone.

42. Mr. Juncker's complaint about Defendant Ventura's routinely aggressive, inappropriate, and bizarre behavior was to no avail. In fact, it made things worse. Defendant Ventura began to retaliate against Mr. Juncker for making a complaint. She purposefully makes noise in her apartment, bangs on walls, curses loudly, and berates Mr. Juncker.

### C. Project Sentinel Investigation

43. In the spring of 2010, after trying to resolve the problems in the complex informally by sending letters and requesting a community meeting, another tenant complained to Project Sentinel, a non-profit housing organization that provides services to help people resolve housing problems.

44. When complaints of housing discrimination are made, Project Sentinel conducts an investigation, and if there is corroboration of discrimination, they make appropriate referrals.

45. Project Sentinel surveyors interviewed 14 residents at the complex. Significantly, 65% of the families surveyed confirmed that the manager had overly restrictive rules toward children. The reports of the surveyed residents were remarkably consistent: they were told that children could not play outside without adult supervision, play on the grass, or ride their bicycles at any time at any place. Respondents interviewed confirmed that management yelled at children and visiting children were told to leave. Project Sentinel's investigation corroborated the complainant's report of discriminatory treatment.

46. After the complaint was made to Project Sentinel, the situation has only worsened. The police were called to intervene between Defendant Ventura and tenants. Management has called the police on child tenants as well.

47. Defendant Ventura continued to yell at children, harass families with children, and impose arbitrary and discriminatory rules. The behavior, sanctioned by the owners and management, is unacceptable.

48. Here are some specific examples of her discriminatory and hostile acts:

- Told children who were talking outside that they were "loitering" and threatened to call police.
- Told tenants their children were "vandalizing" property and breaching the lease because they were drawing with chalk on the sidewalks.
- Told children they could not play on the grassy areas or play outside without adult supervision.
- Told tenants that "one adult per child" supervision was required.
- Threatened to call Child Protective Services.
- Did not allow birth father to play with child on grassy area because he was not a tenant.
- Threatened eviction.
- Threatened to call police.
- Called the police.
- Threw all children's bikes and toys away without notice.
- Yelled at children.
- Banged on parents' doors and yelled at parents.
- Restricted all non-resident children who visited child tenants exclusively to indoor play.
- Prohibited children from sitting on walkways and stairways.
- Prohibited children from bouncing balls.
- Prohibited children from riding their bikes, even through the parking lot to the street.

49. In addition to Defendant Ventura's often bizarre and aggressive behavior, the Landmark Apartments have written rules that impact only families with children. Currently, the house rules state that "[p]aren't or assigned adult babysitter is to ACCOMPANY ANY CHILD (under 16) at all times to ensure their safety." (Emphasis in original.)

50. Landmark Apartments has now removed Mr. De Leon and his cohorts from management of the complex. However, the discriminatory house rules remain in place. Also, though it appears that Defendant Ventura is no longer the on-site manager, she continues to harass Mr. Juncker and his daughter.

## **INJURIES**

51. Since the discrimination began, Mr. Juncker and his daughter's lives have been plagued by continual harassment. This has resulted in significant emotional distress to the family.

52. Christophe Juncker has significant emotional distress injuries. Over the last year, he frequently feels angry and irritable, discouraged, and nervous. He has had physical symptoms, such as stomachaches and headaches. He has withdrawn from normal daily activities, and regularly relives the discrimination and harassment he has suffered.

53. In addition, he is apprehensive of going to his own home, worried that Defendant Ventura who lives next door will be there waiting to harass him and his daughter.

54. Marina Martin-Juncker has suffered from the discrimination. Many of her friends have moved because of the anti-child policy at the complex, and she misses them tremendously.

55. Prior to Defendant Ventura taking over as the on-site manager, Marina used to spend significant amount of time playing outside with other children. Today, she mostly plays indoors, and is confined to more sedentary activities.

56. Mr. Juncker worries about the long-term impact of the harassment on both the emotional and physical well being of his daughter.

57. Since moving out, the Barron-DuBose family has continued to suffer from their experience at Landmark Apartments. The children were uprooted from their home, and put into a new school district where they had to create a new social network.

58. Lamart, Lashawn, and Kataesha have felt ashamed for what happened, and responsible for their family having to move from Landmark Apartments.

59. Kelvin DuBose has felt helpless and despondent about his inability to protect his young children from discrimination.

60. Valerie Barron has felt anxious and frustrated by the situation, and for many months did not sleep well.

61. Valerie Barron and Kelvin DuBose were embarrassed by the entire situation, and the whole family felt humiliated.

## VI. CLAIMS

### A. FIRST CLAIM

*Violation of the Federal Fair Housing Amendment Act*

62. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 61 above.

63. Defendants injured Plaintiffs in violation of the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*, by:

   A. Discriminating against tenants on the basis of familial status;

B. Making statements of discrimination, limitation, or preference regarding familial status;

C. Creating a hostile environment through their harassment of families with children; and

D. Retaliation by taking coercing, intimidating, and threatening actions when tenants exercised their fair housing rights.

64. As a proximate cause of Defendants' conduct, Plaintiffs have been damaged, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### B. SECOND CLAIM

*Violation of the California Fair Employment and Housing Act*

65. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 64 above.

66. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act, Cal. Gov't. Code § 12955 *et seq.*, by:

A. Discriminating against tenants on the basis of familial status;

B. Making statements of discrimination, limitation, or preference regarding familial status;

C. Creating a hostile environment through their harassment of families with children; and

D. Retaliation by taking coercing, intimidating, and threatening actions when tenants exercised their fair housing rights.

67. As a proximate result of Defendants' conduct, Plaintiffs have been damaged as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### C. THIRD CLAIM

*Violation of the California Unruh Civil Rights Act*

68. Plaintiffs reallege and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 67 above.

69. Defendants have violated Plaintiffs' right to fair housing under the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*), in that Defendants discriminated against Plaintiffs based on their familial status in the operation of the property, a business establishment.

70. The conduct of Defendants alleged herein constitutes a denial of full and equal access to housing accommodations to Plaintiffs within the meaning of California Civil Code § 51 *et seq.*

-10-
COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

B. Making statements of discrimination, limitation, or preference regarding familial status;

C. Creating a hostile environment through their harassment of families with children; and

D. Retaliation by taking coercing, intimidating, and threatening actions when tenants exercised their fair housing rights.

64. As a proximate cause of Defendants' conduct, Plaintiffs have been damaged, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### B. SECOND CLAIM

*Violation of the California Fair Employment and Housing Act*

65. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 64 above.

66. Defendants injured Plaintiffs in violation of the California Fair Employment and Housing Act, Cal. Gov't. Code § 12955 *et seq.*, by:

A. Discriminating against tenants on the basis of familial status;

B. Making statements of discrimination, limitation, or preference regarding familial status;

C. Creating a hostile environment through their harassment of families with children; and

D. Retaliation by taking coercing, intimidating, and threatening actions when tenants exercised their fair housing rights.

67. As a proximate result of Defendants' conduct, Plaintiffs have been damaged as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### C. THIRD CLAIM

*Violation of the California Unruh Civil Rights Act*

68. Plaintiffs reallege and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 67 above.

69. Defendants have violated Plaintiffs' right to fair housing under the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*), in that Defendants discriminated against Plaintiffs based on their familial status in the operation of the property, a business establishment.

70. The conduct of Defendants alleged herein constitutes a denial of full and equal access to housing accommodations to Plaintiffs within the meaning of California Civil Code § 51 *et seq.*

71. As a proximate cause of Defendants' conduct, Plaintiffs have been damaged, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### E. FOURTH CLAIM

*Negligence*

72. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 71 above.

73. Defendants had a duty to train themselves and their agents to operate their rental properties in a manner that was free from unlawful discrimination.

74. Defendants violated that duty by negligently failing to train their employees and each other regarding the requirements of federal and state fair housing laws and negligently supervising and training their employees and themselves regarding compliance with federal and state fair housing laws.

75. As a legal result of Defendants' negligent conduct, Plaintiffs have been damaged, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### F. FIFTH CLAIM

*Negligent Supervision*

76. Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 75 above.

77. Because a landlord is required to exercise reasonable care and diligence in supervising his or her employees and agents in any transaction and is bound to exercise his or her skill to the benefit of the tenants, the landlord is liable for any damages suffered by the tenants as a result of any negligence in the performance of his or her duties.

78. The Landmark Apartment Defendants owed a duty to act as reasonably prudent supervisor of their employees and agents in their role as landlords and managers.

79. A reasonably prudent landlord, manager, and onsite manager would not have allowed the creation and enforcement of discriminatory anti-child policies.

80. Defendants acted negligently in failing to properly supervise all work relating to the management of the property.

81. Defendants knew or should have known to utilize reasonably prudent practices for supervising the property but negligently failed to do so.

82. By their conduct as alleged herein, Defendants were the proximate cause of damages sustained by Plaintiffs, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### F. SIXTH CLAIM

*Negligent Infliction of Emotional Distress*

83. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 82 above.

84. Defendants had a duty to train themselves and their agents to operate their rental in a manner that was free from unlawful discrimination.

85. Defendants were negligent in fulfilling this duty.

86. As result of that negligence, Plaintiffs have been damaged, as set forth above. Plaintiffs have suffered and continue to suffer damages, as alleged herein.

### VII. RELIEF

WHEREFORE, Plaintiffs prays for the following relief:

87. That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 United States Code § 1367.

88. That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring Defendants, their agents, their employees, their assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants regardless of familial status, including providing training regarding fair housing laws for all employees and agents, and to enjoin Defendants from refusing to rent because of familial status.

89. That the Court declare that Defendants have violated the provisions of applicable federal and state fair housing laws;

90. That the Court award compensatory and punitive damages to Plaintiffs according to proof;

91. That the Court award up to three times the amount of actual damages to Plaintiffs against Defendants pursuant to California Civil Code § 54.1;

92. That the Court grant costs of suit, including reasonable attorney fees; and

93. That the Court grant all such other relief as the Court deems just.

Dated: February 21, 2011.

**FAIR HOUSING LAW PROJECT**
**Law Foundation of Silicon Valley**

_____
Jessica Fry
Attorney for Plaintiffs

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: February 21, 2011

**FAIR HOUSING LAW PROJECT**
**Law Foundation of Silicon Valley**

_____
Jessica Fry
Attorney for Plaintiffs